Yes, Your Honor. Mr. Chen was unwittingly present during a bust, a drug bust. Chen appeals his conviction of one-count conspiracy to possess with the intent to distribute methamphetamines because the evidence was insufficient. The district court also erred by giving a deliberate — gave the jury a deliberate ignorance instruction. Chen was present when Huang and Tsai, who are from China, were apprehended by law enforcement. Chen took certain actions that were helpful to them, but Chen did not know that there were drugs. Sotomayor Who was driving the car? Zhaopeng It varied. Most of the time, it was being driven by Mr. Huang. There were two cars, by Mr. Huang, and the other one was driven by Mr. Tsai. He — Mr. Chen drove — they were under surveillance, and they went to a dead-end road and turned around, and Mr. Chen was, at that time, driving. Sotomayor How old is Mr. Chen? I couldn't find in the record how old is Mr. Chen and how old are Mr. Wang and Mr. Cai. Zhaopeng Actually, I'm not sure how old he is, but I think somewhere in his late  Sotomayor Mr. Chen is? Zhaopeng Yes. And along with Huang and Tsai. And — Sotomayor Is there any indication of what Mr. Chen thought they were doing? Zhaopeng No.  Sotomayor I've spent a good deal of time in Saipan. Zhaopeng Yeah. Sotomayor There's not a lot of places to go. Zhaopeng No. And he — he had actually arrived on Saipan several days earlier and was staying with his girlfriend and some other friends. And the hotel was owned by Mr. Huang, Huang's family. And Mr. Huang stopped by the hotel because he had to pick up a SIM card for his And he thought, well, you know, I'll go with my cousin in the car and show him a little bit of Saipan. He — they did drop off a car. Also, Huang's parents, besides owning a hotel, also own a car rental place. And Huang and Mr. Chen did drop off another car at another hotel. And then — and that was about one hour later before they got — they actually got busted. So the — Mr. — Sotomayor Can I ask you a question? If we're supposed to take the facts and the light most favorable to the prosecution, which is what we're supposed to do at this point, but let's just take, I guess, some of these facts and you ask me — and let me ask you, what are we to make of them? Because it looks like Mr. Chen rented a vehicle at Huang's request. Zhaopeng Yes. Sotomayor And then Chen picked up Huang after Huang dropped off the Mazda, which is the vehicle in which Tsai would later place the drugs. Zhaopeng Yes. Sotomayor Taken just these facts, I guess, and the light most favorable to the prosecution, is that not possible to — is it not possible to infer that Mr. Chen had agreed or intended to assist in this conspiracy? Zhaopeng Well, the drugs were in a plastic bucket, which he never saw. He was — and he wasn't even present when the paint cans were picked up. He was with Mr. Huang some distance away. Sotomayor Were they in the vehicle that he was — that he had rented at all? Zhaopeng Huang and — yes. And they never used the word drugs. Mr. Huang actually testified that he purposefully didn't want his cousin to know because he was concerned that his cousin might say something to his mother, and he didn't want his mother to know that he was dealing with drugs. Sotomayor But didn't Mr. — or Tsai indicate that the defendant — or his answer was a little bit more, I guess, inculpatory, wasn't it? I mean, didn't it make it — he seemed to think that maybe perhaps Mr. Chen might have known? Zhaopeng Well, what he — he asked Huang, does Chen know what we're doing here? And Chen was not present. And Huang said, what good I do, I do. It's gibberish, but that's how it was translated. From that, you can draw an inference that Chen perhaps knows, but Chen didn't say — I mean, Huang didn't say, oh, yeah, I told him. He just said, I do such bad things, he must know that I'm doing something bad. That's, in essence, what he said. He didn't say, oh, I told Chen. And he — and also — Sotomayor And what's the best argument or what's the best case or cases for your position that there's insufficient evidence to sustain — Zhaopeng I think the Clousey and Tran cases are very helpful, because there, they were present during something similar when there was negotiating with — about drugs. And — but he — and in one, Tran, the person was actually in the car with the marijuana, and both of those cases, the court said, no, there's insufficient evidence, because being present during a drug deal without more isn't sufficient evidence. There's got to be some kind of indication that they were participating in. And there's no evidence that Chen directly participated in. And he drove a car part of the time. He loaned Huang his cell phone because Huang's cell phone stopped working. That's it. He didn't pick up the drugs. He didn't get any money. He was just there visiting with his — with his cousin. And did Mr. Chen lie or — when he was asked about this green car? What's your — what's your argument on that? Yeah. Well, remember I said he dropped — he helped drop off a car, and then an hour — approximately about an hour passed. So the police pull him over. They get out of the car. He agrees to talk. And he's asked, where's the green car? It wasn't, where is the green Mazda? Where is the green car you were driving earlier? Because they were under surveillance this entire time. He — and he said, what green car? He didn't say. That's the only green car he used, though, on the island, right? An hour before, for a very brief two- or three-minute drive. I mean, there's multiple interpretations to that. One is, if he was trying to hide, why would he talk to the police? But he didn't. He not only talked to the police, but he gave them permission to search his — to search his hotel room. And I see that I'm going to run out of time. Do you want to reserve the balance? Thank you. Thank you. Good morning. Good morning again, Your Honors. Garth Backey on behalf of the United States. I don't have much to add to the brief that we've filed. We feel that it sufficiently addresses the arguments that have been raised, and also those that have been raised today during oral arguments. But just to reiterate, the only issue here is the evidence related to this case. There was undoubtedly a conspiracy between Huang and Tsai. That's something that Appellant Chen does not even dispute. Despite his efforts, this is not a mere presence case. Defendant's presence at the scene of criminal activity is not sufficient by itself, but it is evidence. But what about Klossy and — is it Tram, I think? How are — it seems like these cases are somewhat comparable. Somewhat comparable. I — if I could, the difference between those cases primarily is that in this case, there is evidence of intentional participation. What is that? The moving or the helping of the placement of the dropped car. I mean, that car is — But was there ever any evidence that Chen knew — I mean, they never talked about drugs or, you know, were — any kind of explicit reference regarding drugs, was there? No, there's no evidence of that, Your Honor. So what's — when you say the dropped car, what — I mean — That car was placed on purpose. I mean, they — before they go pick up the drugs, they place that green Mazda at a hotel far away from the scene. And when they pick it up, they go straight to the car, they put it in the back, and they immediately leave. So there was obviously — I mean, it's certainly reasonable to infer that that was integral to their plan, to get that bucket, put it in the car, leave it, pick it up later. Chen helps that car be dropped off with Huang. And then to follow up on what Mr. Baines was saying, after they pick up the bucket, which they believe contains drugs, they go immediately to the dropped car. Huang — Chen is present as they enter the hotel parking lot, which only has one entry. It's a circular parking lot. So they drive right past the green car. Tsai gets out, puts the bucket in. They then drive together in tandem away from the scene. Within minutes, they're arrested. So they're arrested within minutes of dropping it off in the green car. Chen's asked, what about the green car? He says, what green car? The keys to the green car are in the center console of the car that Chen is driving. So it's a pretty important and, I would say, calculated false exculpatory statement. So that was not — I don't believe that was present in those cases either. But we also have coordination, which this Court has recognized on numerous occasions is strong evidence or strong circumstantial proof of an agreement. There was coordination prior to the arrival of all parties on Saipan. There was coordination before Chen was picked up. When you say coordination, I saw that. I just wondered if that's — if there's another way to characterize all of these actions, because you point to it. The record shows that Chen brought his plane ticket on his home — on his own while Huang and Tsai were purchased together, right? It's not that they were all three purchased together, correct? Right. All right. Chen arrived in Saipan separately, and then — I mean, and then Chen arrived days before Huang and Tsai. Chen was staying at a separate hotel from Huang and Tsai, and Chen was traveling with a group of his friends, I mean, at least allegedly, and was not necessarily in Saipan to see Huang and Tsai. And I think there was evidence in his hotel room of Normally, when we say coordination, all three, especially in a case like this, where you don't have any clear evidence that the defendant knew about the drugs, the coordination is a little more different, more compelling. True, Your Honor. Perhaps. And again, those are perhaps evidence that is in his favor but was rejected by the jury or not taken into account. And again, the inferences must be drawn in the government's favor at this point in time. But the coordination that we're talking about is the hotel — his hotel reservation, Chen's hotel reservation was made by Huang's wife, who Tsai testified was one of the masterminds of this plan. And what I think is perhaps most important, there's numerous phone calls between Chen and Huang and Huang's wife in the days leading up. Before — the day before Huang arrives, Chen sends him a message and gives him a local phone number to reach him when he arrives. What I think is most important is when Huang arrives, he gets straight to it. They arrive, they go to the hotel, and they're out. They're driving over Saipan, and within, I would say, two hours of arriving on Saipan, they pick up Chen. In the middle of all of the activity surrounding the pickup, I mean, they're renting cars, Huang is showing Tsai the routes of Saipan, how to look out for law enforcement, and then Chen is picked up. Where's the evidence that Huang was showing him how to look out for law enforcement? Or what was the reminder? Tsai's testimony. Tsai's testimony that said — Huang showed me around where to go, where the warehouse was, and reminded me to always look behind me and be careful. They were driving in a — and Chen was in the car? I'm sorry. Chen was not in the car. Well, so then where — I'm sorry, I'm just trying to connect Chen to this. They get to — for lack of a better expression, they get to work immediately. They being? Tsai and Huang. They fly into Saipan, and off they go. They go, they rent the cars, they drive around, Huang shows Tsai where the warehouse is, tells him the routes that we'll be taking, shows him Stanford Hotel. Chen. Let's focus on Chen. Okay. And Chen, what would show his knowledge and intent regarding this conspiracy? Well, I think it's reasonable for the jury to infer that he was told what was going on through these conversations with Huang beforehand. He has numerous conversations with the two masterminds of the conspiracy before they arrived. How many conversations? I think it was 14 phone calls in China, and one message the day before arrival saying, here's the number you can reach me at. Then there's the coordination afterwards where Huang rents the car — I mean, excuse me, Chen rents the car at Huang Construction. He's present when the green car — that's another fact I forgot. Chen is present when the green car is rented. He was sitting outside in the car with Huang. They then go to the hotel. They call the shipping company. Huang gets a little upset. So he's present where all of these events are unfolding. Do you have a question? Okay. I guess I'm just trying to reconcile our precedent, especially in light of a couple of these cases, this Colossi case, and I think it's Rascone. But, you know, it seems like there are facts that support a permissible inference that, you know, that you're pointing to. But our precedent says that permissible inferences does not meet the government's beyond-a-reasonable-doubt burden. I think it was Ramos Rascone. And so just merely suggestive is not enough for a rational juror to conclude beyond a reasonable doubt that the defendant was engaged in wrongdoing rather than innocent behavior. So I guess, you know, some of these incidents that you point to could be innocent behavior on the part of Chen. And I'm just trying to figure out what's your best evidence to show that, you know, he had knowledge, especially in light of Colossi and Ramos Rascone, where in those cases, like in Ramos Rascone, the defense were present for multiple meetings between the conspirators and appeared to be serving as lookouts. Here, Chen's just not as directly implicated from what I can see. But that's what I wanted to ask you. So just Colossi, Ramos Rascone, almost all of the cases cited by appellant except for Tran, the government argues, have been overruled, either because they required an overt act or because they looked at possible or innocent explanations of behavior which is now overruled and not permissible. And so we cannot go into that analysis anymore. We cannot say, oh, but there is this alternative explanation. It is, that's not the standard anymore. And that was clearly the standard in Colossi and Ramos Rascone. In Colossi, the facts were, and check me if I'm wrong, where the defendant actually informed the co-conspirators about an undercover DEA agent in that case. And in Ramos Rascone, like I said, the defense were present for multiple meetings. I'm just trying to figure out how you distinguish those cases from this case here in terms of Chen and what was, you know, the evidence that was most compelling against him. You know, I would Acknowledge that he was never told about drugs. I believe that it's reasonable to infer that he was told by drugs by Huang, based on the evidence, as well as Huang's statement, what good do I do? He must know. And if anyone were to tell him, it would be Huang. Yeah, but what good do I do? He must know. But even if he speaks in vagaries, Huang is the one that would tell him. And so it's a yes or no. But he's assuming that maybe Chen knows, isn't he? No, Huang's the mastermind. So he knows it's a yes or no. It's not a maybe. But why didn't he say yes in response to that question? That's how he just delivered the message that particular time, Your Honor. Just to highlight our biggest points, which none of the cases cited by the defendant have. Here we have coordination. We would phrase this coordination. We have presence during highly suspicious activity. We have a false exculpatory statement. And most important, we have participation. None of the cases cited by the defendant had all of those things that we just listed. So that would be our position, Your Honor. Any other questions? Okay. Thank you. Thank you. It's important to know that not only did Huang say Chen didn't know, Sai said, I don't know if he knows. So if there was all this coordination that the government is And with Huang, he actually, the government, he refused to testify for the government. He told the government that Chen wasn't in on this. So the government took away his plea agreement. And he got sentenced to a much greater term. And why he had every reason to testify against Chen. So why wouldn't he? If Chen really knew, why wouldn't he? And he didn't. And there is no direct evidence. Do you have any? You have 13 more seconds, do you have anything? And, oh, just one other point. The government says, oh, this was all coordinated. Well, you know, if you go visit a strange country, and your cousin's family is there and owns a hotel and owns a car rental, wouldn't you go to that hotel, especially if your cousin's going to come over and visit you later? Where else would you go? Yes, he stayed at the hotel. And why wouldn't the other two stay at the same hotel? Well, because he didn't want his mom to know. All right. I see I'm out of time. Thank you both very much for your arguments and presentation today. The case of United States v. Chen is now submitted. That concludes our calendar for this morning. Thank you all very much. We'll be in recess. Thank you.
judges: Siler, Schroeder, Murguia